[No. B205026. Second Dist., Div. Eight. Mar. 2, 2009.]

AARON BUDROW, Plaintiff and Appellant, v.
DAVE & BUSTER'S OF CALIFORNIA, INC., Defendant and Respondent.

## COUNSEL

Kingsley & Kingsley, Eric B. Kingsley and Brian Levine for Plaintiff and Appellant.

Seyfarth Shaw, Diana Tabacopoulos; Gardere Wynne Sewell, Celeste R. Yeager and Grant H. Teegarden for Defendant and Respondent.

Law Offices of Steven Drapkin, Steven Drapkin; Paul, Hastings, Janofsky & Walker and Stephen L. Berry for California Restaurant Association and California Hotel & Lodging Association as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**FLIER, J.**—Appellant Aaron Budrow brought a putative class action against respondent Dave & Buster's of California, Inc., on the theory that distributions from the "tip pool" to persons who did not provide direct table service violated Labor Code section 351 (section 351).[1] After demurrers to two of appellant's three causes of action were sustained without leave to amend,[2] respondent moved for summary judgment on the remaining cause of action that alleged a violation of Business and Professions Code section 17200. The court granted the motion. We affirm.

### FACTS

The facts are undisputed unless we indicate otherwise.

Respondent owns and operates restaurants throughout the United States, including six in California, and employs for that purpose persons on an hourly basis. Included among these employees are servers, cocktail servers, bussers and bartenders. Appellant was employed by respondent as a cocktail

---

[1] In relevant part, section 351 provides: "No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer. Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for." We omit the portion of section 351 that governs tips paid by credit card; in essence, the omitted provision requires the employer to pay the gratuity to the employee (without any deductions) on the next regular payday following the authorization of the credit card payment.

[2] This ruling is not challenged in this appeal.

server during 2002 for at least a month; he contends that he worked for respondent for three months.

Respondent's tipping policy requires that servers contribute 1 percent of their gross sales to bartenders and other employees. It is this policy that appellant challenges on the ground that section 351 limits tip pools to persons who, according to appellant's theory, provide "direct" table service.

Appellant concedes that respondent does not permit any member of management to participate in, or retain any of the proceeds of, the tipping pool. (Section 351 would be violated if management collected any part of the tip pool.)

It is disputed whether bartenders serve food and drink to patrons sitting at tables. Respondent claims that they do, while appellant contends that bartenders never serve patrons at the tables in the dining area, but only at the bar.

In granting respondent's motion for summary judgment, the trial court found that respondent presented evidence that it did not violate section 351 and that appellant failed to show that there was a triable issue of fact on this issue.

## DISCUSSION

Citing *Leighton v. Old Heidelberg, Ltd.* (1990) 219 Cal.App.3d 1062 [268 Cal.Rptr. 647] (*Old Heidelberg*), appellant contends that controlling case law recognizes a "direct table service requirement." (Boldface omitted.) Appellant explains that the "direct table service requirement" means that tip pools are limited to those employees who directly serve the table; according to appellant, this excludes bartenders. We take up *Old Heidelberg* in part 2 of the opinion. We first discuss whether on its face section 351 imposes such a requirement or limitation.

1. *Section 351 Does Not Distinguish Between "Direct" and "Indirect" Table Service*

There are two segments of section 351 that are relevant to the inquiry whether section 351 distinguishes between "direct" and "indirect" table service. First, section 351 provides that "[n]o employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron . . . ." Second, section 351 also provides that "[e]very gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for."

■   The first limitation has been the subject of a recent opinion in the case of *Lu v. Hawaiian Gardens Casino, Inc.* (2009) 170 Cal.App.4th 466 [88 Cal.Rptr.3d 345]. This limitation is not at issue in this case, in that it is undisputed that neither the employer nor an agent of the employer participated in the tip pool. It is the second limitation that is the subject of this opinion.

We begin with the fact that it is quite apparent that section 351 does not distinguish between the various functions that restaurant employees perform. There are only two conditions created by section 351: the person must be an employee and the tip must have been "paid, given or left for" the employee.

It is apparent that the Legislature could have added to section 351 the "direct table service" requirement, which appellant seeks to invoke. The precursor of section 351 was enacted in 1929, and section 351 in its present form was enacted in 1937. (*Henning v. Industrial Welfare Com.* (1988) 46 Cal.3d 1262, 1271 [252 Cal.Rptr. 278, 762 P.2d 442].)[3] Section 351 was amended in 1965, 1973, 1974, 1975 and 2000. None of these amendments added the limitation of direct table service.

■   We conclude that on its face section 351 does not distinguish between the functions performed by employees nor does it contain, on its face, the requirement that tip pools are limited to those providing direct table service. Appellant indirectly concedes this point by claiming that it is only under the interpretation given to section 351 by *Old Heidelberg* that tip pools are limited to those employees providing direct table service.

■   Although we address *Old Heidelberg* in part 2 of the opinion in order to lay this controversy to rest, we note that, under the " 'plain meaning' " rule of statutory construction, we must look first to the language of the statute; if the statute is clear and unambiguous, we must give effect to its plain meaning. (*Slatkin v. White* (2002) 102 Cal.App.4th 963, 970 [126 Cal.Rptr.2d 54].) "If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Estate of Griswold* (2001) 25 Cal.4th 904, 911 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) "Our inquiry ends if the words of a statute are clear and unambiguous." (*People v. Howard* (2002) 100 Cal.App.4th 94, 97 [121 Cal.Rptr.2d 892].)

Given that section 351 clearly does not impose a "direct table service" requirement on tip pools, we are not required to delve into legislative intent and history, nor are we required to further parse the language of the statute to

---

[3] An even earlier precursor, enacted in 1917, was struck down in *In re Farb* (1918) 178 Cal. 592 [174 P. 320] as violative of " 'substantive due process,' " specifically " 'freedom of contract.' " (*Henning v. Industrial Welfare Com., supra,* 46 Cal.3d at pp. 1270–1271.)

determine its meaning. But, because appellant claims that *Old Heidelberg* interpreted section 351 to impose a "direct table service" requirement, we turn to this decision.

## 2. *The Decision of the Court in* Old Heidelberg *Does Not Limit Section 351 Tip Pools to Those Employees Providing "Direct" Table Service*

In *Old Heidelberg*, the plaintiff, a waitress, sued the restaurant by that name for wrongful discharge. The plaintiff was fired because she refused to share her tips with the busboys, even though she was told when she was hired that she was required to do so. Under the rules of the particular tip pool, the plaintiff was to contribute 15 percent of tips collected to the busboys. The restaurant's motion for summary judgment was granted. The judgment was initially affirmed by the appellate department of the superior court. The Court of Appeal deemed "the issue of the legality of employer-mandated tip pooling among employees to be of statewide importance and issued an order transferring the cause to this court." (*Old Heidelberg, supra*, 219 Cal.App.3d at p. 1065.)

The plaintiff contended that it was an issue of fact whether she was wrongfully discharged. The Court of Appeal, however, found that the issue was one of law and not of fact. According to the appellate court, the plaintiff's "wrongful termination suit can succeed only if employer-mandated tip pooling among employees is prohibited by [section 351]." (*Old Heidelberg, supra*, 219 Cal.App.3d at p. 1067.)

The way that the plaintiff in *Old Heidelberg* articulated her argument is important. She contended that section 351 prohibits the employer from appropriating tips left for the employee and that giving part of her tip to the busboys was just such a prohibited taking or misappropriation. The Court of Appeal rejected this contention in words upon which we cannot improve, which we set forth in the margin.[4] In essence, the court found that, in leaving

---

[4] "The argument is unsound, first, because it is based on the erroneous assumption that the entire tip left by the patron is the waitress's personal property. To buttress this, much is made of for whom the gratuity is left, the intention of the patron in leaving it, and the lack of evidence offered by Old Heidelberg in this connection. We dare say that the average diner has little or no idea and does not really care who benefits from the gratuity he leaves, as long as the employer does not pocket it, because he rewards for good service no matter which one of the employees directly servicing the table renders it. This, and the near impossibility of being able to determine the intent of departed diners in leaving a tip, in our view, account for the Legislature's use of the term 'employees' in declaring that '[e]very such gratuity is hereby declared to be the sole property of the employee or *employees* to whom it was paid, given, or left for.' (§ 351, italics added.) It is clear that the Legislature intended by this section to cover just such a situation. More than often the patron decides what is good service by the attention the busboy gives. As a practical matter, if he is attentive to the needs of the patron, filling

a tip, the patron intends to tip more than just the server or waiter. "[I]f more than one employee, for example a waitress and a busboy, directly serve the table of a patron, the gratuity is left for the '*employees*' within the meaning of section 351, and thereunder becomes *their* sole property as against the employer, to be equitably distributed between them." (*Old Heidelberg, supra*, 219 Cal.App.3d at p. 1070.)

In addition to the immediately foregoing reference to "directly" serving the table of a patron, the Court of Appeal uses the same phrase in an introductory paragraph to its opinion. We set that passage forth in the margin.[5]

There are four reasons why we reject the suggestion that *Old Heidelberg* created a "direct table service" limitation on tip pools.

First. The *Old Heidelberg* court does not define, in the abstract, what "direct" as opposed to "indirect" service is. Thus, it is perfectly reasonable to conclude that a bartender who mixes or pours a drink for a patron that is delivered to the patron's table is "directly" serving the table. By any measure, the service of pouring or mixing the drink is "directly" performed for the patron by the bartender. In fact, the tip pool in *Old Heidelberg* called for a payment of 15 percent to the busboy and 5 percent to the bartender, which was referred to in that case by the parties as "industry practice." (*Old Heidelberg, supra*, 219 Cal.App.3d at p. 1068, fn. 2.) The appellate court in *Old Heidelberg* did not express a disapproval of the 5 percent due the bartender from the tip pool in that case, nor did it brand the bartender's service as "indirect" or, for that matter, "direct." In short, the opinion simply does not define "direct" table service.

Second. The references to direct table service are made in *Old Heidelberg* without any attempt to fashion a rule that would limit tip pools to servers and busboys.

---

water glasses promptly, bringing rolls and butter, clearing the table, mopping up spills, pouring coffee, etc., this kind of attention will incline the patron to leave a generous gratuity even though the service rendered by the waiter or waitress may not be all that satisfactory. Conversely, if the busboy is inattentive and his service is slow, sloven or haphazard, the disgruntled patron just as likely will depart leaving less than a respectable tip or nothing at all regardless of the kind of service rendered by the waiter or waitress." (*Old Heidelberg, supra*, 219 Cal.App.3d at pp. 1069–1070, fn. omitted.)

[5] After noting that California has no established policy against tip pooling, the court went on to state: "To the contrary, the restaurant business has long accommodated this practice which, through custom and usage, has become an industry policy or standard, a 'house rule and is with nearly all Restaurants,' by which the restaurant employer, as part of the operation of his business and to ensure peace and harmony in employee relations, pools and distributes among those employees, who directly provide table service to a patron, the gratuity left by him, and enforces that policy as a condition of employment." (*Old Heidelberg, supra*, 219 Cal.App.3d at p. 1067.)

Third. The holding of *Old Heidelberg* is not only that tip pools are legal but that busboys may participate in tip pools, i.e., that a tip left by a patron may be shared in a tip pool between the server and the busboy. The opinion simply does not address who is to be *excluded* from the tip pool. In other words, the appellate court in *Old Heidelberg* never addressed the question which restaurant employees, if any, are to be excluded from the tip pool. Consequently, the court did not rule, as appellant contends, that bartenders are to be excluded.

Fourth. It may well be that the appellate court in *Old Heidelberg* recognized, albeit indirectly, that there is some limitation on the types of employees who can be included in a tip pool. But the court did not decide what those limitations are, nor did it address the criteria or standards under which those limitations should be set.

The foregoing four factors combine to persuade us that *Old Heidelberg* did not hold that tip pools are to be limited only to those employees who provide "direct table service."

Tip pools exist to minimize friction between employees and to enable the employer to manage the potential confusion about gratuities in a way that is fair to the employees. Here we defer again to the court in *Old Heidelberg*.[6] Thus, igniting an artificial controversy over "direct" versus "indirect" table service serves no useful purpose when the statutory touchstone is whether the gratuity has been "paid, given to, or left for" the employee or employees. It is in the nature of a tip pool that it is based on the general experience of each particular establishment, that it is only broadly predictive of the reasons for and the patterns of tipping in that particular restaurant and that, in the final analysis, this is the best that anyone can do. It is simply not possible to devise a system that works with mathematical precision and solomonic justice in each one of the millions of transactions that take place every day.

■ Section 351 provides that the tip must have been "paid, given to, or left for" the employee. Given that restaurants differ, there must be flexibility in determining the employees to whom the tip was "paid," "given," or "left." ■ A statute should be interpreted in a reasonable manner. (*In re McSherry*

---

[6] "[S]uch tip-pooling practice by the employer protects the personal property of the employees and ensures a fair distribution of the gratuity to those who earned it, making certain that each gets his fair share. This way, distribution of tip income does not depend upon the whim or the generosity of the employee who is first to pick up the tip, and prevents a greedy employee from depriving another of his fair share of the gratuity, or a waitress, plaintiff, for example, from depriving a busboy of his share of a tip because in *her* opinion he has not performed satisfactorily. If a busboy fails to give satisfactory service, it is the responsibility of management, not the waitress, to do something about it." (*Old Heidelberg, supra*, 219 Cal.App.3d at p. 1071.)

(2003) 112 Cal.App.4th 856, 862 [5 Cal.Rptr.3d 497].) ■ Ultimately, the decision about which employees are to participate in the tip pool must be based on a reasonable assessment of the patrons' intentions. It is, in the final analysis, the patron who decides to whom the tip is to be "paid," "given," or "left." It is those intentions that must be anticipated in deciding which employees are to participate in the tip pool.

We are not persuaded by appellant's citation to a letter dated December 28, 1998, signed by the chief counsel of the Division of Labor Standards Enforcement of California's Department of Industrial Relations in which, according to appellant, it is made "abundantly clear" that employees who do not provide direct table service cannot be included in a tip pool.

In the first place, section 351 is clear and unambiguous and makes no reference to "direct table service." As we have noted, the limitation that appears on the face of section 351 is that the tip must have been "paid, given to, or left for" the employee. And it is also true that the aforesaid letter states: "The prevailing industry practice distributes the overwhelming majority of the pooled gratuities to waiters and waitresses, followed by a smaller percentage to busboys, and a still smaller percentage to other categories of employees who provide limited direct table service (i.e., bartenders, hostesses, and maitre d's)." Thus, even the materials relied upon by appellant state that industry practice includes bartenders in the tip pool. This point was also noted in *Old Heidelberg*, as we have observed. (See text, *ante*, at p. 881, citing *Old Heidelberg, supra*, 219 Cal.App.3d at p. 1068, fn. 2.)

We note that the aforesaid letter identifies dishwashers, cooks and, for the most part, chefs,[7] as employees who "do not provide direct table service" and therefore "cannot be included in any tip pooling arrangement." "While the ultimate interpretation of a statute is an exercise of the judicial power [citation], when an administrative agency is charged with enforcing a particular statute, its interpretation of the statute will be accorded great respect by the courts 'and will be followed if not clearly erroneous. [Citations.]' " (*Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564].) We have already noted that neither section 351 nor *Old Heidelberg* states or holds, respectively, that only employees providing "direct table service" may participate in tip pools, nor does either authority define what "direct table service" is, nor does either authority state which employees this phrase includes and which employees it excludes. In the abstract, an opinion to the contrary is clearly erroneous. Be that as it may,

---

[7] The letter notes that an exception excluding chefs is the chef at a sushi restaurant who prepares the food at the patron's table. This is a good illustration of our earlier point that a tip pool reflects the experience of each restaurant with the reasons for and patterns of tipping at that restaurant.

the propriety of administrative action predicated on the phrase "direct table service" is not before us and therefore we do not express an opinion about any such administrative action involving the phrase "direct table service."

■ Our holding is that bartenders employed by respondent may participate in tip pools established pursuant to section 351. This comports with the facts and the actual holding of *Old Heidelberg*, as well as with section 351.

In light of the holdings of this opinion, it is immaterial that it is a disputed question of fact whether the bartenders themselves bring to the patron's table the drink they have poured or mixed.

### 3. *Appellant's Invocation of Business and Professions Code Section 17200*

Because the tip pool maintained by respondent was not illegal, it follows that, as a matter of law, appellant cannot maintain his action under Business and Professions Code section 17200, which is predicated solely on the alleged illegality of respondent's tip pool.

Respondent, supported by amici curiae California Restaurant Association and California Hotel & Lodging Association, contends that appellant cannot invoke Business and Professions Code section 17200 because he was not injured and because Labor Code section 355 mandates that the Department of Industrial Relations, and thus by implication not private parties, enforce section 351. In light of our conclusion that the tip pool in question was not illegal, it is not necessary for us to additionally decide whether respondent's contentions on these issues have any merit.

### 4. *The Requests for Judicial Notice Are Denied*

Respondent requests that we take judicial notice of a document entitled "The 2002 Update of The DLSE [California Division of Labor Standards Enforcement] Enforcement Policies and Interpretations Manual (Revised)," some materials that appear to be a part of the legislative history of the 1973 amendment to section 351, and a letter dated September 8, 2005, signed by the California State Labor Commissioner.

As we have pointed out, the text of section 351 is clear and unambiguous. Accordingly, even if it were appropriate to take judicial notice of any of the foregoing documents, and we do not say that it would be, we need not refer to anything except the plain text of section 351.

■ Respondent and amici curiae appearing on behalf of respondent request that we take judicial notice of a number of rulings by state and

federal trial courts relating to tip pools. A written trial court ruling in another case has no precedential value in this court (*Santa Ana Hospital Medical Center v. Belshé* (1997) 56 Cal.App.4th 819, 831 [65 Cal.Rptr.2d 754]), which is also the rule in federal courts (*King v. Order of Travelers* (1948) 333 U.S. 153, 160–161 [92 L.Ed. 608, 68 S.Ct. 488]). Accordingly, we decline to take judicial notice of these decisions.

## DISPOSITION

The judgment is affirmed. Respondent is to recover its costs on appeal.

Rubin, Acting P. J., and O'Neill, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied June 17, 2009, S171956. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.

---

*Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.