Filed 10/31/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LAUREN O'GRADY,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>MERCHANT EXCHANGE<br>PRODUCTIONS, INC.,<br><br>  Defendant and Respondent. | A148513<br><br>(San Francisco County Super.<br> Ct. No. CGC-15-547796) |

An employer is in the business of providing a banquet facility at which food and beverages are served. The employer adds a mandatory, and substantial, "service charge" to the contract for every banquet. The employer distributes *some* of the service charge to managerial employees who do *not* serve food and beverages at the banquet. An employee filed a putative class action to force the employer to treat the service charge as a gratuity and distribute *all* of it to employees who *do* serve food and beverages at the banquet. The employer took the position that two Court of Appeal opinions hold, as a matter of law under stare decisis, that a service charge can *never* be a gratuity. The trial court agreed, and sustained the employer's general demurrer without leave to amend.

The issue presented here is whether the "service charge" *may* be a "gratuity" that Labor Code section 351[1] requires to go *only* to the non-managerial employees involved with the actual serving of the food and beverages. We conclude there is no categorical prohibition why what is called a service charge cannot also meet the statutory definition of a gratuity, and thus we reverse.

---

[1] Statutory references are to the Labor Code unless otherwise indicated.

1

## BACKGROUND

Plaintiff Lauren O'Grady describes herself in her complaint as "a banquet server and bartender at the Julia Morgan Ballroom" in San Francisco that is owned and operated by defendant Merchant Exchange Productions, Inc. Plaintiff brought this putative class action for herself "and on behalf of all others similarly situated, namely all other non-managerial food and beverage banquet service employees who have worked at the Julia Morgan Ballroom."

The object of the action was defendant's practice of automatically imposing a 21 percent "service charge" to every food and beverage banquet bill. According to plaintiff, part of the monies collected as service charges are kept by defendant, with the rest distributed by defendant to "managers and other non-service employees." Plaintiff alleged that the service charge constituted a gratuity, but defendant has "failed to distribute the total proceeds of [these] gratuities to non-managerial banquet service employees" as required by California law, and thus defendant's practice "violates" section 351.

The totality of plaintiff's factual allegations (omitting only paragraph numbers) read as follows: "At the Julia Morgan Ballroom, Defendant has routinely added a 21% service charge to its food and beverage banquet bills. [¶] These service charges have been in the form of automatic charges which customers are required to pay, and which reasonably appear to be gratuities for the service staff. [¶] It is typical and customary in the hospitality industry that establishments impose gratuity charges in the range of 18-22% of the food and beverage bill. [¶] Thus, when customers have paid these charges, it is reasonable for them to have believed they were gratuities to be paid to the service staff. [¶] Indeed, because of the way these charges are depicted to customers, and the custom in the food and beverage industry that gratuities in the range of 18-22% are paid for food and beverage service, customers have paid these charges reasonably believing they were to be remitted to the service staff. [¶] However, the defendant has not remitted the total proceeds of these gratuities to the non-managerial employees who serve the food and beverages. [¶] Instead, the defendant has had a policy and practice of retaining for itself

2

a portion of these gratuities and/or using a portion of these gratuities to pay managers or other non-service employees."

Defendant's service charge practice was alleged to support the following causes of action:

## "COUNT I

### "Statutory Gratuity Violation

"Defendant's conduct, as set forth above, in failing to remit to non-managerial banquet service employees the total proceeds of gratuities added to banquet customers' bills constitutes a violation of California Labor Code § 351.  This violation is enforceable pursuant to the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq (UCL).  Defendant's conduct constitutes unlawful, unfair, or fraudulent business acts or practices in that Defendant has violated California Labor Code § 351 in not remitting to the non-managerial service employees the total gratuities that are charged to customers.  As a result of Defendant's conduct, Plaintiff and class members suffered injury in fact and lost money and property, including the loss of gratuities to which they were entitled.   Pursuant to California Business and Professions Code § 17203, Plaintiff and class members seek declaratory and injunctive relief . . . and to recover restitution. . . .[2]

## "COUNT II

### "Intentional Interference with Advantageous Relations

"The Defendant's conduct as set forth above in failing to remit the total proceeds of gratuities added to banquet bills to non-managerial service employees who have

---

[2]  In a separate section of the complaint headed "CLASS ACTION ALLEGATIONS," plaintiff alleges that "Plaintiff and class members have been deprived of gratuities that were not remitted to them."  There follows a number of "questions of law and facts common to the class" that continue to use the word "gratuity" instead of "service charge."  Defendant does not dispute that plaintiff has standing to prosecute this action under the UCL, even though section 351 does not provide for a private cause of action.  (See *Lu v. Hawaiian Gardens Casino, Inc*. (2010) 50 Cal.4th 592, 598; *Matoff v. Brinker Restaurant Corp*. (C.D. Cal. 2006) 439 F.Supp.2d 1035, 1037–1038.)

3

worked in the defendant's banquet department constitutes unlawful intentional interference with the advantageous relationships that exist between these employees and the defendant's customers under state law.

## "COUNT III

## "Breach of Implied Contract

"The Defendant's conduct as set forth above constitutes breach of implied contract under state law. The defendant has breached an implied contract with its customers that the employees would receive the proceeds of the gratuities, for which the service employees are third party beneficiaries.

## "COUNT IV

## "Unjust Enrichment

"The Defendant's conduct as set forth above constitutes unjust enrichment under state common law."

As noted, defendant interposed a general demurrer, and explained its objection to each of plaintiff's causes of action as follows: By reason of *Searle v. Wyndham Internat., Inc.* (2002) 102 Cal.App.4th 1327 (*Searle*) and *Garcia v. Four Points Sheraton LAX* (2010) 188 Cal.App.4th 364 (*Garcia*), "Plaintiff fails to state a [cause of action] because a mandatory service charge which is automatically added to a customer's bill and which a customer is required to pay, *is not a gratuity as a matter of law*." (Italics added.) Defendant elaborated: "Simply put, each of the four causes of action in the Complaint is predicated on a claim that is contrary to California law—specifically that the mandatory service charges Defendant adds to customers' bills are gratuities that must be distributed to its servers. But, as a matter of settled California law, mandatory service charges, such as those alleged to have been charged by Defendant, are not gratuities, and thus need not be disseminated to employees as required for tips and other gratuities. [Citations.] Accordingly, none of the causes in the Complaint states facts sufficient to constitute a valid cause of action. . . . Further, because the critical flaw in Plaintiff's Complaint cannot be cured by amendment, Defendant submits that the Complaint must be dismissed without leave to amend." (Fns. omitted.)

4

The trial court heard argument on whether *Searle* and *Garcia*—identified by the demurrer as the "settled California law"—did indeed foreclose liability. Concluding "I have no choice but to follow *Garcia* and *Searle*," the court determined defendant was not violating section 351. Accepting defendant's argument that the alleged statutory violation was the predicate for each of plaintiff's causes of action, the trial court sustained defendant's general demurrer to the entire complaint. Plaintiff appeals from that ruling.[3]

In our original opinion, which was not certified for publication, we reversed. Defendant filed a petition for rehearing, raising a number of points. We also received a letter from the Labor Commissioner advising that the issue of whether a service charge may be deemed a gratuity for purposes of section 351 is a matter of "significant importance to service workers" and "continuing public interest," warranting publication of the opinion. We granted rehearing to examine the issue more fully.

---

[3] Although plaintiff purports to appeal from a "judgment of dismissal after an order sustaining a dismissal," the record and the register of actions establish that only the order sustaining the demurrer was ever filed or entered. That order is not itself appealable (*I. J. Weinrot & Son, Inc. v. Jackson* (1985) 40 Cal.3d 327, 331), but it may be reviewed on appeal from an ensuing judgment or order of dismissal. (Code Civ. Proc., § 906; *Jennings v. Marralle* (1994) 8 Cal.4th 121, 128.) Nevertheless, "[t]he fact that no judgment of dismissal was entered on the order sustaining the demurrer does not present an insurmountable obstacle to the appeal." (*Shepardson v. McLellan* (1963) 59 Cal.2d 83, 88.) It would be inefficient to dismiss the appeal, order the trial court to enter a judgment of dismissal on the sustained demurrer, and then permit a subsequent appeal from the dismissal. (*Ibid.*) Instead, as the parties treat the order as a judgment and the appeal as properly before us, we "deem[] the order sustaining the demurrer to incorporate a judgment of dismissal and interpret[] plaintiff's notice of appeal as applying to such dismissal." (*Federer v. County of Sacramento* (1983) 141 Cal.App.3d 184, 185, citing this court's decision in *Bellah v. Greenson* (1978) 81 Cal.App.3d 614; cf. *Estate of Dito* (2011) 198 Cal.App.4th 791, 799–800 ["[W]here it is clear the court intended to entirely dispose of the action, we are empowered to amend the order to make it an appealable judgment of dismissal"].)

5

# DISCUSSION

## Standard Of Review

The scope of review for a general demurrer sustained without leave to amend is governed by established principles:  Our review is de novo.  We accept as true, and liberally construe, all properly pleaded allegations of material fact, as well those facts which may be implied or reasonably inferred from those allegations.  (*Guerrero v. Superior Court* (2013) 213 Cal.App.4th 912, 925.)  Because such factual allegations "however odd or improbable" (*Potter v. Arizona So. Coach Lines, Inc*. (1988) 202 Cal.App.3d 126, 130–131) are to be accepted, " ' "the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court." ' "  (*Quelimane v. Stewart Title Guaranty Co*. (1998) 19 Cal.4th 26, 47.)  "[A]ny particular count which is well pleaded will not be affected by defects in a separate cause of action, so long as inconsistent or antagonistic facts are not pled."  (*Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 21–22.)

On the other hand, we do not accept contentions, deductions, or conclusions of fact or law.  (*Strawn v. Morris, Polich & Purdy, LLP* (2019) 30 Cal.App.5th 1087, 1094.)  Similarly, although we permit some latitude to " 'the accuracy with which [the plaintiff] describes the defendant's conduct' " (*Quelimane v. Stewart Title Guaranty Co*., *supra*, 19 Cal.4th 26, 47), we are not bound to respect a pleader's "legal characterization" of events or transactions.  (*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1314.)  Our sole consideration is an issue of law—whether the plaintiff's complaint is sufficient "to state a cause of action under any legal theory."  (*King v. CompPartners, Inc*. (2018) 5 Cal.5th 1039, 1050; *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.)  Stated another way, the complaint "survives a general demurrer insofar as its states, however inartfully, facts disclosing some right to relief."  (*Longshore v. County of Ventura*, *supra*, 25 Cal.3d 14, 22; see *Frances T. v. Village Green Owners Assn*. (1986) 42 Cal.3d 490, 496, fn. 2 [" 'plaintiff need only plead facts showing that [she] may be entitled to some relief' "].)

**The Nature Of "Gratuity" Under Section 351**

"Gratuity" is statutorily defined to " include[] any tip, gratuity, money, or part thereof that has been paid or given to or left for an employee by a patron of a business over and above the actual amount due the business for services rendered or for goods, food, drink, or articles sold or served to the patron."  (§ 350, subd. (e).)

Section 351 provides:  "No employer or agent[4] shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer.  Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for. An employer that permits patrons to pay gratuities by credit card shall pay the employees the full amount of the gratuity that the patron indicated on the credit card slip, without any deductions for any credit card payment processing fees or costs that may be charged to the employer by the credit card company.  Payment of gratuities made by patrons using credit cards shall be made to the employees not later than the next regular payday following the date the patron authorized the credit card payment."

---

[4]  " 'Agent' means every person other than the employer having the authority to hire or discharge any employee or supervise, direct, or control the acts of employees." (§ 350, subd. (d).)  It is clear from the tip pool decisions (see fn. 6, *post*), that an employer who establishes a gratuity pool cannot require, or allow, that any portion of it go to persons who qualify as the employer's agent.  (*Jameson v. Five Feet Restaurant, Inc*. (2003) 107 Cal.App.4th 138, 143–145; accord, *Budrow v. Dave & Buster's of California, Inc*. (2009) 171 Cal.App.4th 875, 878 ["Section 351 would be violated if management collected any part of the tip"].)  However, an employee who also qualifies as an agent can keep tips left specifically for that employee by a customer.  (See *Chau v. Starbucks Corp*. (2009) 174 Cal.App.4th 688, 698 ["The code section does not provide that merely because an employee falls within the definition of an 'agent'. . . , an employer must bar that employee from retaining a tip that was given to him by a  customer for services provided to the customer.  . . .  Under this provision, an employer must permit and employee (without regard to the employee's status) to keep a tip 'paid given to or left for' that employee by a customer"].)

7

"The Legislature wanted to protect employees from employers who used their positions to unfairly command a share of the employee's tip." (*Chau v. Starbucks Corp.*, *supra*, 174 Cal.App.4th 692, 696, 699 ["section 351 was enacted to prevent an employer from pressuring an employee to give the employer tips left for the employee"].) The purpose of section 351 is to prevent employers from using any gratuity-related practice which reduces an employee's wages, or appropriates monies belonging to employees, practices which are condemned as a "fraud upon the public." (§ 356; see *Henning v. Industrial Welfare Com.* (1988) 46 Cal.3d 1262, 1274; *Searle*, *supra*, 102 Cal.App.4th 1327, 1332.) The language of section 351 in several ways reflects the Legislature's insistence that a gratuity is indivisible, inalienable and "the sole property of the employee or employees to whom it was paid, given, or left for." Even in our increasingly cashless society, an employer is commanded to "pay the employees the full amount of the gratuity that the patron indicated on the credit card slip." (§ 351.)

### The Indefinite Nature of a "Service Charge"

The terms "tip," "gratuity," and "service charge" are commonly used as if they are interchangeable synonyms. (E.g., Cal. Code Regs., tit. 18, § 1603(h).) Many other states expressly use them all in measures that serve the same function as section 351.[5] However, investigation demonstrates that "service charge" is a protean term of no fixed meaning.

Black's defines service charge as "A charge assessed for performing a service." (Black's Law Dict. (10th ed. 2014) p. 1576, col. 2.) This tautological imprecision is hardly helpful, but it is representative. (See, e.g., Oxford Eng. Dict. "service charge"

---

[5] See, e.g., *In re Alleged Labor Law Violation of Chafoulias Mgmt. Co.* (Minn.Ct.App. 1997) 572 N.W.2d 326 [statute and explanatory regulation]; Tenn. Code Ann., § 50-2-107. Hawaii has a statute unequivocally declaring that a service charge by "[a]ny hotel or restaurant . . . for the sale of food or beverage services" is "tip income" which shall be distributed "directly to its employees" unless the establishment has "clearly disclose[d] to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees." (Hawaii Rev. Stat. § 481B-14, construed in *Davis v. Four Seasons Hotel Ltd.* (Hawaii 2010) 228 P.3d 303.)

8

OED Online, Oxford University Press (June 2017) [www.oed.com/viewEntry 176678 [as of Oct. 29, 2019] (OED) ["a charge made . . . for services rendered"]; Webster's 10th Collegiate Dict. (1993) p. 1067, col. 2 ["a fee charged for a particular service"].) Viewed in isolation, "service charge" is an amorphous, shapeless concept. It only assumes meaning from the surrounding context.

For example, in the context of retail installment contracts, it commonly means interest on an unpaid installment (*Dickey v. Bank of Clarksdale* (Miss. 1938) 184 So. 314; *TruServ Corp. v. Morgan's Tool & Supply Co., Inc*. (Pa. 2012) 39 A.3d 253; *Michigan Pipe & Valve-Lansing, Inc. v. Hebeler Enterprises, Inc*. (Mich.App. 2011) 808 N.W.2d 323; *Kenworthy v. Bolin* (Wash.App. 1977) 564 P.2d 835); but if interest is stated separately, it can be viewed as a late fee. (*Roy A. Miller & Sons, Inc. v. Industrial Hardwoods Corp*. (Ind.App. 2002) 775 N.E.2d. 1168.) In this context, the service charge would appear to be a cost for delayed payment of the debt principal.

In the context of public utilities, a service charge is a fee charged for commencing, maintaining, or discontinuing gas, electricity, water, etc. (Gov. Code, § 54346.2; *Brooktrails Township Community Services Dist. v. Board of Supervisors of Mendocino County* (2013) 218 Cal.App.4th 195; *Craig v. City of Macon* (Mo. 1976) 543 S.W.2d 772; *Mountain Cable Co. v. Department of Taxes* (Vt. 1998) 721 A.2d 507; *Roanoke v. Fisher* (Va. 1952) 70 S.E.2d 274; cf. Gov. Code, § 53056 [regulating amount of service charge by cable television system]; *In re Vista Marketing Group Ltd*. (Bankr. N.D. Ill. 2016) 557 B.R. 630.) In this context, the service charge would appear to represent a labor cost.

California pays particular attention to use of service charges to evade statutory commands or duties. For example, " ' "A lender is not prohibited from charging an extra and reasonable amount for incidental services, expenses or risk additional to the lawful interest other than for the loan of money. He may make a reasonable charge for investigating, arranging, negotiating, brokering, making, servicing, collecting and enforcing his obligation," ' " so long as the "service charge" is not a subterfuge for evading usury limits. (*Forte v. Nolfi* (1972) 25 Cal.App.3d 656, 681, quoting *Klett v.*

9

*Security Acceptance Co.* (1952) 38 Cal.2d 770, 787.)  An insurer is allowed similar latitude so long as it is not using a service charge to inflate the premium.  (*Troyk v. Farmers Group, Inc*. (2009) 171 Cal.App.4th 1305, 1324–1325.)  And every credit card company and retailer "who fails to correct a billing error" within the statutory period "shall not be entitled to . . . any interest, finance charges, service charges, or other charges."  (Civ. Code, §§ 1747.50, subd. (b) [credit card issuer], 1747.60, subd. (b) [retailers].)

In short, simply calling something a "service charge" hardly ever explains what it is—or why it is being imposed.

A decade ago, this court considered the scope of a municipal hotel occupancy statute that taxed the services and accommodations accompanying the use and possession of the hotel room.  We noted:  "Just what qualifies as 'services' within the hotel context does not appear to have ever been addressed in a reported California decision.  Food and drink would obviously appear to be included, were it not for specific exemptions under state law.  [Citations.]  Beyond that, however, 'services' would appear to be that vast residuum of amenities offered or made available to guests, limited only by the imagination—or the nerve—of hoteliers to charge extra.  Use of a barber or hairdresser would likely qualify, as would a spa or gym facilities. So too the provision of business-related needs such as conference rooms, stenographic/copying resources, specialized communication equipment, or Wi–Fi access."  (*Batt v. City and County of San Francisco* (2010) 184 Cal.App.4th 163, 173.)  If the concept of taxable "services" can be this broad, the potential scope for "charges" on those services would logically be equally expandable.

Thus, depending upon how one chooses to read section 350, a mandatory service charge could be seen as either a sum paid by the customer "over and above the actual amount due . . . for . . . food [and] drink . . . sold . . . to the patron," or included in "the

10

actual amount due . . . for . . . services rendered  . . . for . . . food [and] drink . . . served to the patron." (§ 350, subd. (e).)[6]

Given that the context here also involves the provision of food and drink, the restaurant tip pool decisions are an obvious point of reference,[7] one to which we shall return.  At this point it is appropriate to consider the two decisions deemed controlling by the trial court, both of which involved tipping, compulsion, and service charges.

### *Searle* **And** *Garcia*

As previously noted, the trial court believed "I have no choice but to follow *Garcia* and *Searle*," and thus those decisions put plaintiff out of court.  Given this perceived importance, the decisions warrant close examination.

In *Searle*, a San Diego hotel imposed a service charge of 17 percent to every room service order.  The bill presented with each room service order set out the amount of the order itself, the 17 percent service charge, a three dollar "room delivery charge," and had "a blank line for a tip or gratuity."  Searle, who had spent a night at the hotel, alleged that the hotel's room service billing practice was deceptive "because guests are not advised the service charge is in fact a gratuity paid to the server.  Searle also contends the service

---

[6] This may reflect the malleable nature of what constitutes a service charge.  In this connection we note that the full definition of service charge in the Oxford English Dictionary adopts the first approach—"a charge made (*additional to that for the food*, etc.) for services rendered, esp. for serviced in a hotel or restaurant."  (OED, [www.oed.com/viewEntry 176678 [as of Oct. 29, 2019], italics added.)

[7] Commencing with *Leighton v. Old Heidelberg, Ltd*. (1990) 219 Cal.App.3d 1062, 1068, the validity of restaurant and food provider gratuities being pooled and then distributed them among employees, was addressed in *Jameson v. Five Feet Restaurant, Inc*., *supra*, 107 Cal.App.4th 138, *Budrow v. Dave & Buster's of California, Inc*., *supra*, 171 Cal.App.4th 875, *Etheridge v. Reins Internat. California, Inc*. (2009) 172 Cal.App.4th 908, *Chau v. Starbucks Corp*., *supra*, 174 Cal.App.4th 688, and *Avidor v. Sutter's Place, Inc*. (2013) 212 Cal.App.4th 1439.  Together with *Searle*, *Garcia*, and several federal district court decisions applying California law (see *O'Connor v. Uber Technologies, Inc*. (N.D. Cal. 2014) 58 F.Supp.3d 989; *Matoff v. Brinker Restaurant Corp*., *supra*, 439 F.Supp.2d 1035; *Louie v. McCormick & Schmick Restaurant Corp*. (C.D. Cal. 2006) 460 F.Supp.2d 1153), they constitute essentially the entire corpus of recent caselaw addressing the scope and application of section 351.

11

charge is unfair because it compels guests to pay a gratuity, which Searle believes should be entirely voluntary.  Thus Searle allege[d] the hotel's room service practices violate the unfair competition law (UCL)." (*Searle*, *supra*, 102 Cal.App.4th 1327, 1330–1331.)  The trial court concluded no deceptive practice was alleged, and the Court of Appeal agreed.

Section 351 does not feature prominently in the *Searle* opinion.  The statute is mentioned as codifying state policy that " 'ensure[s] that employees, not employers, receive the full benefit of gratuities that patrons intend for the sole benefit of those employees who serve them.' " (*Searle*, *supra*, 102 Cal.App.4th 1327, 1332, quoting *Leighton v. Old Heidelberg, Ltd*., *supra*, 219 Cal.App.3d 1062, 1068.)  The Court of Appeal concluded the hotel's billing practice was not an unfair one under the UCL: "[O]ther than Labor Code section 351, we are not aware of any express regulation of tipping on room service billing.  Because [the hotel's] practice is alleged to cause servers to receive more in the way of tips than would otherwise occur, it plainly does not violate the spirit or letter of Labor Code section 351." (*Searle*, *supra*, 102 Cal.App.4th 1327, 1333–1334.)

Reaching this conclusion, the court said this:  "Searle argues that in imposing the 17 percent service charge and failing to disclose to guests that the service charge is paid to the servers, Wyndham is acting unfairly in two respects:  it is compelling payment of a gratuity which should otherwise be entirely voluntary, and second it is tricking consumers into paying servers more than they would otherwise provide by way of a tip. The difficulty we have with this argument is its premise:  that because the 17 percent service charge is paid entirely to the server, we must therefore treat it as a gratuity. Neither logic nor the customs and usages associated with tipping support such a conclusion." (*Searle*, *supra*, 102 Cal.App.4th 1327, 1334.)

The court explained:  "The . . . room service patron[] is given both clear notice the service being offered comes at a hefty premium and the freedom to decline the service. . . .  [T]he hotel patron has no legitimate interest in what the hotel does with the . . . service charge.  The hotel is free to retain for itself the large premium, as well as the service charge, or to remit all or some of the revenue to its employees.  Because the

12

service charge is mandatory and because the hotel is free to do with the charge as it pleases, the service charge is simply not a gratuity which is subject to the discretion of the individual patron.

"Moreover, the hotel's decision to compensate its room service servers by way of the 17 percent service charge in no material way interferes with the patron's reasonable expectations with respect to the custom of tipping. As commentary, custom and Labor Code section 351 make clear, tipping is solely a matter between patron and server. While some patrons will care about what the server receives from his employer, others will not. The curiosity of those who . . . want to know how much the server has in his pocket is just that: curiosity. It is a curiosity about something, i.e., the server's financial condition, in which the tipper has no legitimate interest.

"In arguing that it is deceitful to fail to clearly notify hotel guests that the service charge is paid to the server, Searle again assumes the patron has some right to know what the hotel is paying the room service server. . . . [W]e are not willing to indulge the notion that the custom of tipping somehow gives patrons the right to know how much a server is being paid by his or her employer. In this situation the only obligation the hotel has to the patron is the one codified in Labor Code section 351: an assurance that, however large or small, the tip will go to the server, not the employer. Wyndham's compensation practices of course fully meet this obligation. In sum, in failing to advise its guests as to how it compensates its employees, the hotel is not guilty of any deceit even under the broad provisions of the UCL." (*Searle*, *supra*, 102 Cal.App.4th 1327, 1334–1335.)

*Garcia* involved a city ordinance (the Ordinance) that in plain effect directed certain hotels to treat their mandatory service charges as owed "to workers who render the services for which the charges have been collected."[8] (*Garcia*, *supra*, 188

---

[8] Quoting parts of the Ordinance, the *Garcia* court summarized some of its provisions: "Section 184.02 states in pertinent part: 'Service Charges shall not be retained by the Hotel Employer but shall be paid in the entirety by the Hotel Employer to the Hotel Worker(s) performing services for the customers from whom the Service Charges are collected.' . . . Service charges collected for banquets or catered meetings 'shall be paid equally to the Hotel Workers who actually work the banquet or catered

13

Cal.App.4th 364, 370.) The plaintiffs in *Garcia* were service workers employed by some of those hotels, who alleged that their employers "failed to compensate plaintiffs and members of the putative class in the amount of the entire service charge." (*Id*. at p. 372.) The trial court sustained the hotels' demurrer without leave to amend, and dismissed the employees' complaints, concluding that "the gratuity provisions preempted the Ordinance" because the state statutes "set a 'boundary between moneys which . . . belong to the employees, individually or jointly' and have 'served as a bright-line distinguishing the validity of competing claims (from business owner and worker) to moneys provided by the customer.' . . . [T]he 'employee does not have any claim to ownership in payments made by patrons which fall outside the definition of "gratuity." The vice of the Service Charge Ordinance is that it tries to do exactly this. It attempts to give the employees an ownership interest in mandatory charges added by the hotel . . . .' " (*Ibid.*)

*Garcia* is a lengthy opinion, with numerous parts. It was also a comprehensive defeat of the hotel employers' broad-front strategy to overturn the Ordinance. The Court

---

meeting'; service charges collected for room service 'shall be paid to the Hotel Workers who actually deliver the food and beverage associated with the charge'; and service charges collected for porterage services 'shall be paid to the Hotel Workers who actually carry the baggage associated with the charge.' . . . [¶] A 'service charge' is defined in the Ordinance as 'all separately-designated amounts collected by a Hotel Employer from customers that are for service by Hotel Workers, or are described in such a way that customers might reasonably believe that the amounts are for those services, including but not limited to those charges designated on receipts under the term "service charge," "delivery charge," or "porterage charge." ' " (*Garcia*, *supra*, 188 Cal.App.4th 364, 375–376, fns. omitted.)

Some years later, the same Court of Appeal that decided *Garcia* examined the legislative history of the Ordinance and determined that it was aimed at a specific practice: " '[P]atrons of the . . . hotels are often charged a "service charge" of approximately twenty percent on their banquet fees. That charge is commonly and understandably mistaken as a gratuity by the consumer, and thus no actual gratuity is left.' " (*Audio Visual Services Group, Inc. v. Superior Court* (2015) 233 Cal.App.4th 481, 494.) "As a result, hotel workers saw a decrease in their gratuities as customers either reduced or eliminated gratuities they would otherwise have paid because they assumed the service charge was paid to the worker." (*Id*. at p. 493.)

14

of Appeal rejected the hotels' contention that the Ordinance was preempted by state law because the Ordinance "expressly contradict[ed] the Labor Code and impliedly enter[ed] a field fully occupied by general state law." (*Garcia*, *supra*, 188 Cal.App.4th 364, 374.) The court concluded there was no conflict or overlap because the state statutes did not address service charges, while the Ordinance "is a purely local concern . . . aimed at ensuring decent compensation for hotel service workers . . . ." (*Id*. at p. 381.) The court also rejected arguments that the Ordinance was unconstitutionally vague or violated equal protection. (*Id*. at pp. 381–389.) Finally, the court found there was no taking of the hotel owners' property because "the Ordinance does not operate upon or alter an identified property interest," but merely "reallocates hotels' revenue from service charges to pay compensation." (*Id*. at p. 390.) In a telling phrase, the court noted: "A 'service charge' under the Ordinance might better be described in common parlance as a charge imposed in lieu of gratuities.' " (*Ibid*.)

Searle and *Garcia* do involve mandatory "service charges" imposed in the context of selling food and drink to the public—charges, we hasten to add, that were paid to employees. But it is undeniable that the two opinions contain certain language that cannot bring much comfort to plaintiff.

Defendant naturally finds support in this language in *Searle*: "[T]he patron has no legitimate interest in what the hotel does with the service charge. The hotel is free to retain for itself the large premium, as well as the service charge, or to remit all or some of the revenue to its employees. Because the service charge is mandatory and because the hotel is free to do with the charge as it pleases, the service charge is simply not a gratuity which is subject to the discretion of the individual patron." (*Searle*, *supra*, 102 Cal.App.4th 1327, 1334–1335.) Even more understandably, defendant cannot too often quote these words from *Garcia*: "A gratuity is not a service charge. A service charge is a separately designated amount collected by a hotel from patrons that is part of the actual amount due the hotel for services rendered, rather than something 'over and above the amount due.' [Citation.] Thus, a service charge by definition is not a gratuity. The

15

Legislature has made clear that amounts due for services (which include service charges) are not gratuities." (*Garcia*, *supra*, 188 Cal.App.4th 364, 377.)

We have looked long and hard at *Searle* and *Garcia*. The crux is, we believe, this paragraph in *Garcia*: "Hotels contend the Ordinance transforms a service charge into a gratuity because it is paid to the workers performing the services. *Searle v. Wyndham Internat., Inc*., *supra*, 102 Cal.App.4th 1327, 1334–1335 has rejected that argument. The hotels contend the Ordinance's treatment of service charges conflicts with the Labor Code because the statutory definition of gratuity excludes employers' property (service charges). [Citation.] We reject the hotels' argument." (*Garcia*, *supra*, 188 Cal.App.4th 364, 377.)

The sole argument made and addressed at pages 1334 and 1335 in the *Searle* opinion (quoted above) was whether the Wyndham's hotel room service charge was actionable under the UCL. The Court of Appeal concluded in effect, "no harm, no foul." The customer would end up paying the charge regardless of what it was called, regardless of why the hotel imposed it, and regardless of what the hotel did with it. The bottom line was that the Wyndham's internal accounting practice of treating the service charge as a de facto gratuity for the employees was none of the customer's business. The service charge might look like a gratuity because it ultimately went from the customer to the employee, but it was not a true gratuity, a gratuity for purposes of sections 350 and 351, because it was not rendered "subject to the discretion of the individual patron." (*Searle*, *supra*, 102 Cal.App.4th 1327, 1335.)

With this somewhat glancing and oblique reference to a tip/gratuity being purely and exclusively voluntary, *Searle* was simply following the logic of *Leighton v. Old Heidelberg, Ltd.*, *supra*, 219 Cal.App.3d 1062, the first of the tip pool decisions, and, at the time, pretty much the only discussion on the subject of Labor Code gratuities. Hence the reference to the hotel guest having "the freedom to decline the service." (*Searle*, *supra*, 102 Cal.App.4th 1327, 1334.) Moreover, *Searle* could be distinguishable because it did not involve what plaintiff's complaint describes—the employer wrongfully keeping part of service charge and wrongfully directing the remaining part to persons not

16

statutorily eligible to receive it. Most significantly, the patron here is alleged to have an idea—if not the actual intent because "of the way these charges are depicted to customers"—that the service charge willdinos "be remitted to the service staff."

The service charge in *Searle* was paid to employees but the customer was not told of this. Yet change two details—(1) suppose the hotel tells the patron that the service charge will be remitted to the employees, thus relieving the patron of paying gratuities to each individual employee, but in fact (2) the employer retains some or all of the service charge. Such a scenario is reasonably close to what defendant is alleged to be doing. We very much doubt that in this situation the *Searle* court would continue to maintain either "that how and what a hotel pays its room service servers is a matter between the hotel and the servers"—or that there was no deception. (*Searle*, *supra*, 102 Cal.App.4th 1327, 1330.)

As for *Garcia*, how can there be any doubt after reading the sentences "A gratuity is not a service charge" and "The Legislature has made clear that amounts due for services (which include service charges) are not gratuities"? (*Garcia*, *supra*, 188 Cal.App.4th 364, 377.) Logically, one would expect the court to strike down the Ordinance because it not only ignored these principles, but, indeed, abolished them by reclassifying a service charge as a gratuity, thereby legislatively transmuting the service charge into what amounted to a mandatory gratuity. But the *Garcia* court *upheld* the validity of the Ordinance, and revived the workers' claim that the hotels were obligated by the Ordinance to hand over the service charges collected but not distributed by the hotels. In plain effect, the employees were deemed to have a property interest in the "service charges" imposed by the hotels which the Ordinance declared to be gratuities, and which must therefore be distributed to the employees.

Thus, if the Legislature had indeed "made clear" that service charges "are not gratuities," one would expect the Court of Appeal to go the other way and hold that the Los Angeles City Council had no power to flout this distinction with the municipal ipse dixit that the service charge was no longer "part of the amount due the hotel for services rendered," but was now to be regarded as a gratuity and thus the exclusive property of the

17

workers. Yet the *Garcia* court rebuffed the hotel-employers' arguments to have the Ordinance struck down as contrary to state law in the form of section 350 and 351, or as a taking of their property.

Both *Searle* and *Garcia*, and this dispute, demonstrate that it all may come down to what label is used and who gets to do the labelling. In *Searle*, it was the employer who made the "service charge" into a gratuity. In *Garcia*, it was the city council that relabeled the hotels' "service charges" as gratuities and, like sections 350 and 351, mandated that they go only to employees performing the service, not management. (See fn. 8, *ante*.) In *Searle* the mandatory service charge was imposed by the employer, and the Court of Appeal had no problem with accepting it as a gratuity in all but name. In *Garcia* what the employer might call a service charge was legislatively reclassified as a gratuity, and the Court of Appeal had no problem in accepting the reclassification and letting aggrieved employees enforce it. The voluntary nature of a gratuity discussed in *Searle* is thus incompatible with the actual results in *Searle* and *Garcia*, namely, allowing a mandatory gratuity to stand.[9] Neither *Searle* nor *Garcia* involved what we have here—an employee who alleges that what the ballroom customer meant for employees to have is being kept by the employer. Notwithstanding some of language found in the *Searle* and *Garcia* opinions, in neither case did the court take money from the employees. We do

---

[9] The notion of gratuity has clearly moved beyond the notion of some coins left on the diner counter after a meal, which appears to have been the factual matrix in the first modern decision to address sections 350 and 351. (See *Leighton v. Old Heidelberg, Ltd.*, *supra*, 219 Cal.App.3d 1062, 1065 ["Plaintiff was hired as a waitress by defendant restaurant . . . and terminated . . . for refusing to pool her tips with the busboys"]; cf. *In re Application of Farb* (1918) 178 Cal. 592, 600 (dis. opn. of Richards, J.) ["In the individual instance the offering is usually small"].) Not only are there the mandatory gratuities seen in *Searle* and *Garcia*, they are frequently encountered in modern-day life. For example, cruise ship passengers are routinely told that a daily charge will be added to their room bill and will be used as a gratuity for the ship's personnel. A small-print notice is commonly found at the bottom of a menu advising that a group above a certain size will have specified gratuity automatically added to the bill. Tourists have made their peace with the *service compris* imposed in France and other parts of Europe. In short, the notion of an involuntary gratuity has perhaps become more widespread and accepted than in the past.

not believe the *Searle* court, or the *Garcia* court, or the Legislature, would accept or approve the proposition that an employer should have the unfettered freedom of definition if it might result in depriving employees of sums that otherwise might qualify as gratuities. In short, what a court does is sometimes more significant than what it says.

In light of the foregoing, we decline to treat either *Searle* or *Garcia*, or both together, as controlling. Neither, or both together, should be read, as defendant does, as categorially establishing that what may be called a "service charge" by an employer can never be a gratuity. Accordingly, plaintiff's cause of action, for "statutory gratuity violation" is not *per se* foreclosed by *Searle* and *Garcia*, as the trial court believed. We now consider whether that cause of action makes out a claim for relief sufficient to survive a general demurrer.

### Plaintiff's First Cause of Action

The gist of plaintiff's complaint is unambiguous—defendant is pocketing money that should go to its employees or directing it to persons ineligible to receive any part of that money. As will be shown, such alleged conduct could state a claim to relief under a number of labels.

Although we would ordinarily hesitate to accept plaintiff's characterization of the service charge as a gratuity because it smacks of a conclusion of fact or law (*Strawn v. Morris, Polich & Purdy, LLP*, *supra*, 30 Cal.App.5th 1087, 1094; *Morris v. Redwood Empire Bancorp*, *supra*, 128 Cal.App.4th 1305, 1314), the same result can be achieved as a reasonable interpretation of factual allegations that defendant's service charge is "depicted to customers" as intended for "the service staff," and which "reasonably appear to be . . . for the service staff." Moreover, the service charge is "added . . . to . . . food and beverage banquet bills." These allegations must be given the meaning that they derive from the context in which they are used. (*Speegle v. Board of Fire Underwriters* (1946) 29 Cal.2d 34, 42; *National Automobile & Casualty Ins. Co. v. Payne* (1968) 261 Cal.App.2d 403, 408.) The context here is the commercial provision of food and drink. That the service charge is added to the cost of food and drink logically makes it "over and above the actual amount due . . . for . . . food [and] drink." (§ 350, subd. (e).) The fair

inference from the allegations is that the service charge is plainly perceived by the customer to be a gratuity, and is intended by the customer to be a gratuity. This, we note, was the customer's assumed intent in *Garcia*. (See *Garcia*, *supra*, 188 Cal.App.4th 364, 377 ["Hotel patrons assume the service charges are paid to the workers performing the services," summarizing statutory language].) An equally fair inference is that the customer would not intend a gratuity to be pocketed by defendant.

"We assume, as we must because this case is before us at the demurrer stage, that [plaintiff] has alleged conduct that could be unlawful, unfair or fraudulent." (*Congress of Cal. Seniors v. Catholic Healthcare West* (2001) 87 Cal.App.4th 491, 495; accord, *Coast Plaza Doctors Hospital v. UHP Healthcare* (2002) 105 Cal.App.4th 693, 699.) There is no problem with plaintiff acting on behalf of her fellow servers, given that a collective gratuity is no novelty in this context, and indeed is the predicate for the entire line of tip pool decisions. (See *Chau v. Starbucks Corp.*, *supra*, 174 Cal.App.4th 688, 692 ["Collective tipping is the norm"].)

In her complaint, plaintiff makes a clear distinction between "managers and other non-service employees" and "non-managerial" employees. Although the complaint does not define either of these terms, it is not hard to discern what plaintiff means: non-managerial employees are those "who serve the food and beverages," work that is not done by managers. We construe the allegations of "managers or . . . non-service employees" as meaning agents, who are prohibited from receiving any part of a gratuity. (See fn. 4, *ante*.) Additionally, as for present purposes defendant's service charge is to be treated as a gratuity, the allegation that defendant is "retaining for itself a portion" means that defendant is thus contravening sections 350 and 351 in two distinct ways: (1) keeping some of it, and (2) distributing some of it to persons who are not supposed to get any part of it.

The gravamen of plaintiff's claim rests upon conduct or a practice that our Supreme Court has noted may be tantamount to conversion. (Cf. *Lu v. Hawaiian Gardens Casino, Inc.*, *supra*, 50 Cal.4th at 592, 603–604 ["To the extent that an employee may be entitled to certain misappropriated gratuities, we see no apparent

20

reason why other remedies, such as a common law action for conversion, may not be available"].) Moreover, as will be shown, defendant's practice may support a cause of action for restitution or unjust enrichment.

Plaintiff alleges there is a custom "in the hospitality industry" to treat sums designated as "service charges" as gratuities for employees. For present purposes, we accept the existence of such an industry custom, however inartfully or inadequately alleged. (E.g., *McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1978) 21 Cal.3d 365, 382 ["custom is established by the allegations of the . . . complaint"]; *Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 842–843; cf. *Shaw v. Cal. Dept. of Alcoholic Beverage Control* (9th Cir. 1986) 788 F.2d 600, 610 ["The plaintiffs need not specifically allege a custom or policy; it is enough if the custom or policy can be inferred from the allegations of the complaint"].)

In its brief, and at oral argument, defendant emphasized that tipping has been traditionally thought of as a voluntary bilateral transaction between the patron of a commercial establishment and the employee of the establishment. Moreover, there are decisions treating the patron's intent as unascertainable, if not irrelevant. (See *Leighton v. Old Heidelberg, Ltd.*, *supra*, 219 Cal.App.3d 1062, 1069 [referring to "the near impossibility of being able to determine the intent of departed diners in leaving a tip"], quoted with approval in *Avidor v. Sutter's Place, Inc.*, *supra*, 212 Cal.App.4th 1439, 1446–1447 & fn. 2, 1448 ["customer intent is not relevant"]; *Etheridge v. Reins Internat. California, Inc.*, *supra*, 172 Cal.App.4th 908, 919–920; *Budrow v. Dave & Buster's of California, Inc.*, *supra*, 171 Cal.App.4th 875m, 880, fn. 4.) But the traditional definition of gratuity may be changing.

It is, for example, now accepted that the essential function of tip pools is a collective gratuity. (See *Chau v. Starbucks Corp.*, *supra*, 174 Cal.App.4th 688, 692.) And in that context, courts have not shied away from undertaking "a reasonable assessment of the patrons' intentions." (*Budrow v. Dave & Buster's of California, Inc.*, *supra*, 171 Cal.App.4th 875, 883.) One court called this the "principle of implied or presumed customer intent" and the "implied 'collective' intent." (*Chau v. Starbucks*

21

*Corp.*, *supra*, 174 Cal.App.4th 688, 703 [text & fn. 7].)  The legislative body in *Garcia* assumed it knew what was in patrons' minds.  Granted, most tipping involves modest amounts.  (See fn. 9, *ante*.)  But the context here is not ordinary, because the sums involved may be anything but modest.  That being so, there almost certainly will be a written contract, where certain terms and undertakings may be spelled out.  The universe of patrons may be small, and their intent vis-à-vis the mandatory "service charge" may be more subject to discovery than that of ordinary restaurant diners.

On the other hand, the tip pool decisions accept that voluntary donative intent is not decisive.  An accepted element of coercion may enter when a third party—the employer—imposes a mandatory practice requiring employees to share gratuities voluntarily made by customers.  The customer may intend the gratuity left to go only to the individual who personally served him or her at the table, but the employer's tip pool sharing policy will be enforced.  In other words, the customer's intent is not necessarily dispositive.  Or even consulted.  (See the practices mentioned in fn. 9, *ante*.)

We are also mindful that Labor Code provisions concerning compensation and working conditions are to be liberally construed in favor of employees.  (E.g., *Augustus v. ABM Security Services, Inc*. (2016) 2 Cal.5th 257, 262; *McLean v. State of California* (2016) 1 Cal.5th 615, 622.)  Both section 350 and section 351 define a gratuity as what is "paid . . . for an employee by a patron."  This language does not preclude the possibility that the payment may not be entirely voluntary in the mind of the patron.

We agree with *Garcia* that sections 350 and 351 are not the sole word on the subject of gratuities, and thus do not preclude what is called a service charge being treated as a gratuity.  Collective tipping may be the result of private initiative (*Searle*) or legislative command (*Garcia*).  Plaintiff is attempting to establish that it can have yet another source—the custom "in the hospitality industry" to treat sums designated as "service charges" as gratuities for employees.  In other words, custom or usage can serve as a common law augmentation of sections 350 and 351.  If true, defendant's practice would clearly appear to be at odds with the purpose of section 351, which is " 'to ensure that employees, not employers, receive the full benefit of gratuities that patrons intend for

22

the sole benefit of those employees who serve them.' " (*Searle*, *supra*, 102 Cal.App.4th 1327, 1332.) That purpose would not be served by allowing employers to take money intended for employees simply by saying the customer has paid a "service charge."

**Plaintiff's Other Causes of Action**

In light of the foregoing, it remains only to briefly look at plaintiff's other causes of action.

The trial court concluded that plaintiff's second cause of action, for "intentional interference with advantageous relations," and her third cause of action, for breach of implied contract, were defective because "Our case law teaches that you need to show . . . that that interference is done wrongfully. There's no allegation here of . . . anything being done wrongfully." As just noted, the complaint is sufficient to make out a claim that defendant's "alleged conduct that could be unlawful, unfair . . . fraudulent." (*Congress of Cal. Seniors v. Catholic Healthcare West*, *supra*, 87 Cal.App.4th 491, 495.) Moreover, as already noted, the gravamen of plaintiff's claim may amount to conversion, which would thus easily qualify as "wrongful" for purposes of the second and third causes of action. It will also be shown to support a claim for restitution. The wrongfulness of plaintiff's practice is the clear and obvious inference of plaintiff's complaint, which is sufficient here. (See *Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1152 ["a plaintiff seeking to recover for interference with prospective economic advantage must . . . plead . . . that the defendant engaged in an independently wrongful act . . . 'that is, if it is proscribed by some . . . statut[e] . . . .' "].)

The trial court concluded that, with respect to plaintiff's fourth cause of action, for unjust enrichment, "under California law, it's not a cause of action." True, there are decisions to this effect (e.g., *Melchior v. New Line Productions, Inc*. (2003) 106 Cal.App.4th 779, 793), but this Appellate District appears split on the issue. (See *Dunkin v. Boskey* (2000) 82 Cal.App.4th 171, 197 [recognizing cause of action]; *Hirsch v. Bank of America* (2003) 107 Cal.App.4th 708, 717, 721–722 [same]; *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387 ["Unjust enrichment is not a cause of action," citing *Melchior* & distinguishing *Dunkin*]; see also Johnson & Johnson, *What Happened to*

23

*Unjust Enrichment in California The Deterioration of Equity in the California Courts* (2010) 44 Loyola L.A. L.Rev. 277, 279, 288 [unjust enrichment "is sometimes no longer interpreted as a cause of action; rather it has been reduced to a light echo in remedial analysis"], [*Melchior* "has no basis in California law"]; cf. Rest.3d Restitution & Unjust Enrichment, § 1, com. e(3) [attacking "misconception . . . that restitution is essentially a *remedy*"].)

The point is largely academic because this District has long taken the position that, even if unjust enrichment does not describe an actual cause of action, the term is "synonymous with restitution," which *can* be a theory of recovery. (See *Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1314–1315 [recognizing possibility of restitution cause of action but concluding it was not made out in the complaint]; *Lauriedale Associates, Ltd. v. Wilson* (1992) 7 Cal.App.4th 1439 [same]; *McBride v. Boughton*, *supra*, 123 Cal.App.4th 379, 387–388 ["we construe McBride's purported cause of action for unjust enrichment as an attempt to plead a cause of action giving rise to a right of restitution"]; Rest.3d Restitution & Unjust Enrichment, § 1, com. b ["In no instance does the fact or extent of liability in restitution depend on whether the source of that liability is conceived or described as unjust enrichment"], com. c ["When used in this Restatement . . . the terms 'restitution' and 'unjust enrichment' will generally be treated as synonymous"].) This is accepted even by the courts which do not consider unjust enrichment a proper cause of action. (See *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1132; *Melchior v. New Line Productions, Inc.*, *supra*, 106 Cal.App.4th 779, 793.)

Thus, the actual title of plaintiff's Count IV cannot be dispositive. This District has also repeatedly accepted that " 'there is no particular form of pleading necessary to invoke the doctrine' of restitution." (*Dinosaur Development, Inc. v. White*, *supra*, 216 Cal.App.3d 1310, 1315; accord, *Dunkin v. Boskey*, *supra*, 82 Cal.App.4th 171, 198, fn. 15.) It is particularly apt to hold this principle in mind because reviewing courts are more concerned with the substance of the underlying allegations than how the plaintiff labels the cause of action. (E.g*., Quelimane v. Stewart Title Guaranty Co*., *supra*, 19 Cal.4th

at pp. 38–39; *McBride v. Boughton*, *supra*, 123 Cal.App.4th 379, 387 ["we . . . ignor[e] erroneous or confusing labels if the complaint pleads facts which would entitle the plaintiff to relief"]; *Porten v. University of San Francisco* (1976) 64 Cal.App.3d 825, 833 ["Mistaken labels and confusion of legal theory are not fatal . . . . An action cannot be defeated merely because it is not properly named"].) Even if unjust enrichment is not to be recognized as an independent stand-alone cause of action, plaintiff alleges she and her fellow workers are entitled to restitution of the service charges wrongfully withheld from them. Lastly, it must be remembered that the first cause of action was framed under the authority of the UCL, which allows for restitution. (See *Matoff v. Brinker Restaurant Corp.*, *supra*, 439 F.Supp.2d 1035, 1038–1039, citing *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 126–127.)

As for plaintiff's third cause of action for "Breach of Implied Contract," this court has noted that an implied contract "is simply another way of describing . . . restitution." (*McBride v. Boughton*, *supra*, 123 Cal.App.4th at p. 388, fn. 6.) Thus, given that plaintiff's third and fourth causes of action amount to the same thing—a claim for restitution of monies defendant has improperly failed to distribute to employees—what we have said with respect to Count IV is equally applicable to Count III.

The preceding discussion demonstrates that plaintiff's complaint, while decidedly skimpy, has allegations more than sufficient to make out both a claim to "some relief" in her complaint. (*King v. CompPartners, Inc.*, *supra*, 5 Cal.5th 1039, 1050; *Longshore v. County of Ventura*, *supra*, 25 Cal.3d 14, 22.)

### Concluding Remarks

In the wake of *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, and armed with the authorization of the Labor Code Private Attorneys General Act of 2004 (§ 2698 et seq.), individual employees have brought class actions on behalf of themselves and fellow employees, flooding the courts with so-called "wage and break" cases, and related claims based on various provisions of the Labor Code that employers are allegedly violating with the result of preventing employees from receiving the full value of their wages and compensation due and owing. The numerous complaints of

25

unpaid minimum or overtime wages, delayed payment of wages owed at separation, denied meal or rest periods, unreimbursed business-related expenses, and prohibited bookkeeping practices constitute a "matter of continuing public interest" to the Labor Commissioner. In her request for publication, the Labor Commissioner drew our attention to the legislative findings behind the municipal ordinance in *Garcia,* the city council determining it was necessary because hotel workers "ha[d] seen their income decline, and ha[d] reported a reduction in the gratuities they receive from customers, because . . . hotels ha[d] instituted a practice of add a mandatory service charge of '15% to 20% of the bill for banquets and other large group events.' " (*Garcia*, *supra*, 188 Cal.App.4th 364, 376–377; see also *Audio Visual Services Group, Inc. v. Superior Court*, *supra*, 233 Cal.App.4th 481, 493 [purpose of the Ordinance was "to ensure that . . . hotel workers who relied on gratuities earned a living wage"].) Clearly, the Labor Commissioner does not believe this situation is confined to downtown Los Angeles.[10]

### DISPOSITION

The "Order Granting Defendant Merchant Exchange Productions, Inc.'s Demurrer to Plaintiff's Class Action Complaint" filed April 5, 2016, is amended by adding the following paragraph: "Plaintiff's complaint on file herein is dismissed." As so modified, the order/judgment is reversed. Plaintiff shall recover her costs on appeal.

---

[10] This subject was recently the cover story in a national magazine. (See Samuels & Burnley, *Living on Tips* (Sept. 2, 2019) TIME, p. 40 et seq.)

_____
Richman, Acting P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.


*O'Grady v. Merchant Exchange Productions, Inc. et al.* (A148513)

Trial Court: San Francisco County Superior Court

Trial Judge: Honorable Harold E. Kahn

Attorney for Plaintiff and Appellant: Lichten & Liss-Riordan, Michael Freedman, Matthew D. Carlson, Shannon Liss-Riordan;

Attorney for Defendant and Respondent: Littler Mendelson, P.C., Joseph A. Schwachter, Galen M. Lichtenstein.